# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **WILLIAM CALLAHAN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:06-cv-01368 (VLB)** |
| **MICHELLE BUERKLE,** | : | |
| **Defendant.** | : | **July 25, 2008** |

### MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #43]

The plaintiff, William Callahan, a public school teacher, filed this action against the defendant, Michelle Buerkle, the principal of his school. Callahan claims that Buerkle sexually harassed him and retaliated against him in violation of 42 U.S.C. § 1983 and that she defamed him. Buerkle has filed a motion for summary judgment. For the reasons given below, Buerkle's motion [Doc. #43] is GRANTED as to the § 1983 claim and the defamation claim is DISMISSED without prejudice to refiling in state court.

The following allegations of fact contained in the complaint and gleaned from the pleadings are relevant to the motion for summary judgment. Callahan served as a "teaching vice principal"as well as a classroom teacher under Buerkle's predecessor, Roberta Abell. Callahan decided to resign from the teaching vice principal position because the atmosphere among the school staff was "tense" and he felt "squeezed" between Abell and the teachers. [Doc. #43, Ex. A, p. 13] The school board later decided to replace Abell with Buerkle and asked Callahan to rescind his resignation. Callahan did not rescind his

resignation and was not reinstated as teaching vice principal. Callahan alleges that Buerkle knew that he wanted to be reappointed to the position of teaching vice principal, but she appointed someone else instead. Because the record does not include the timing and sequence of the events, it is unknown when the school board asked Callahan to rescind his resignation, when Buerkle became the principal, or when she filled the teaching vice principal position. Callahan does not claim that he lost income because he was not reappointed to the teaching vice principal position.

On a Friday in August 2004, at approximately 10 a.m., Buerkle called Callahan at home, told him that she wanted "to be able to count on" him, and asked him to go out for a drink or two that night. [Doc. #43, Ex. A, p. 21] Callahan declined the invitation. On the following Monday or Tuesday, Buerkle told Callahan that she was going to reassign him from a classroom on the first floor of the school to one on the second floor. Other teachers were also reassigned to different classrooms at that time. Callahan's first floor classroom, which was located across from the school office, later became a detention room.

Callahan alleges that Buerkle reassigned his classroom in retaliation for not accepting her invitation to go out for drinks. Callahan suggests that he had difficulty with stairs because he was recovering from surgery on his leg, but he acknowledges that he had to use the stairs even when his classroom was located on the first floor. It is unclear from the record whether the classroom reassignment appreciably increased the frequency of his use of the stairs. There

is no indication of when Callahan's surgery was performed or whether he was working under any medically prescribed restrictions. Callahan also alleges that Buerkle retaliated by giving him a new schedule with an "extra duty period" two or three times per week, and that the new schedule caused him to lose his "bus duty pay." [Doc. #44, Aff. p. 2] Callahan does not state how much pay he lost as a result of the schedule change.

Callahan further alleges that Buerkle touched him improperly during a training session in January 2005. According to Callahan, Buerkle placed her chair very close to his, "stroked" his leg from the upper thigh to the knee, and said either that he "really look[ed] good" or that he was wearing "nice pants and nice shoes." [Doc. #43, Ex. A, pp. 26-27] Later during the program, Buerkle again placed her chair very close to Callahan, and he then decided to leave the room.

The Court turns to the standard governing Buerkle's motion for summary judgment. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313,

315 (2d Cir. 2006).  "The moving party bears the burden of showing that he or she is entitled to summary judgment."  <u>Huminski</u>, 396 F.3d at 69.  "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 91 (2d Cir. 2002).

Buerkle moves for summary judgment on the ground that Callahan's allegations fail to establish (1) that Buerkle altered the terms or conditions of his employment or (2) that Buerkle subjected him to a hostile work environment.  As to the first category, "[w]hen a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable . . . ."  <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 753-54 (1998).  "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits."  (Emphasis added.)  <u>Id.</u> at 761.  In drawing that distinction, the United States Supreme Court referred to cases

**4**

involving employment actions that do not constitute significant changes, including reassignment to a more inconvenient job and a demotion without change in pay, benefits, duties, or prestige.  Id.

Considering the facts in the light most favorable to Callahan, he has not established that he experienced a tangible employment action as a result of Buerkle's alleged sexual harassment.  Callahan alleges that Buerkle knew he wanted to rescind his resignation from the teaching vice principal position, but she did not offer him the position.  Although it is unclear from the record as to precisely when Buerkle decided to fill the position, she appears to have made the decision at the beginning of the 2004-05 school year.  At that time, she made no sexual demands on Callahan; even if her invitation to go out for drinks in August 2004 occurred before she filled the position, Callahan's allegations regarding the invitation establish that it was not sexual in nature.  Callahan's other allegations regarding the reassignment of his classroom, his new schedule with "extra duty periods," and the loss of his "bus duty pay" do not fit the definition of tangible employment actions set forth by the United States Supreme Court in Ellerth because they are not significant changes in his employment status.

As to whether Buerkle subjected Callahan to a hostile work environment, Callahan "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered. . . .  This test has objective and subjective elements:  the misconduct shown must be severe or pervasive enough to create

an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. . . . As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. . . . Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness. . . . But it is well settled in this Circuit that even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace. . . .

"In short, a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment. . . . To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Alfano v. Costello, 294 F.3d 365, 373-74 (2d Cir. 2002). "[C]onduct must be extreme to amount to a change in the terms and conditions of employment . . . ." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

In the present case, the only allegation that could support a hostile work environment claim involves Buerkle's conduct at the training program, when she "stroked" Callahan's leg and complimented his appearance. Because her conduct occurred only at the training program, Alfano indicates that the conduct consisted of "isolated acts" rather than "continuous and concerted," or pervasive, acts. To survive a motion for summary judgment, isolated acts must

be very serious, and the United States Court of Appeals for the Second Circuit has indicated in other cases how serious the acts must be.  For example, in Mormol v. Costco Wholesale Corp., 364 F.3d 54 (2d Cir. 2004), the court affirmed the granting of summary judgment against a plaintiff who alleged that her supervisor twice requested sex from her and told her that he would not permit her to take a vacation unless she had sex with him.  In Quinn v. Green Tree Credit Corp., 159 F.3d 759 (2d Cir. 1998), the court determined that a supervisor's comment about an employee's buttocks and the supervisor's deliberate touching of the employee's breasts with papers he was holding did not give rise to a triable hostile work environment claim.  In light of cases such as those, Buerkle's stroking of Callahan's leg in the present case is not serious enough to withstand summary judgment.

Buerkle's motion for summary judgment [Doc. #43] is GRANTED as to Callahan's § 1983 claim.  Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Callahan's defamation claim, which is DISMISSED without prejudice to refiling in state court.  The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  July 25, 2008.